**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE AVET, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 4555 |
| | ) | |
| vs. | ) | Honorable Judge |
| | ) | Rebecca R. Pallmeyer |
| THOMAS J. DART, in his official capacity | ) | |
| as COOK COUNTY SHERIFF and | ) | |
| COUNTY OF COOK, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF AND MEMORANDUM OF LAW
AND RESPONSE TO DEFENDANT'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

**Introduction**

Plaintiff, **GEORGE AVET,** (hereinafter "Plaintiff" or Avet) filed his complaint against the **THOMAS J. DART, in his official capacity as, Cook County Sheriff and COUNTY OF COOK,** (hereinafter "Defendants"), alleging in Count I, that the City discriminated against Plaintiff by refusing to grant him accommodations in violation of Title I of the American with disabilities Act of 1990 (hereinafter "ADA"). Plaintiff has alleged in Count II, Retaliation and Harassment under Title I of the ADA.

**DEFENDANT'S INTRODUCTION AND FACTUAL BACKGROUND**

The Defendants has utilized numerous facts in both its Introduction and Factual Background which Plaintiff has objected to or has disputed in Plaintiff's Response to the Defendants' Local R. 56.1. Plaintiff's Statement of Additional Facts and Memorandum of Law in Opposition, has

1

created substantial material facts to cause this court to deny the Defendants' Motion for Summary Judgment and set this matter for trial.

## SUMMARY OF PLAINTIFF'S UNCONTESTED FACTS ARGUMENT

George Avet ("Avet") has been working as a Deputy Sheriff for the Cook County Sheriff's Office since 2005 and from 2011 to the present and is considered a correctional officer (PSAF #1) Avet was injured on duty when he was attempting to break up a fight between two inmates which caused physical impairment injuries to his left shoulder, left arm strain and a traumatic brain concussion (permanent disability) and then was off duty from January of 2013 until the present and has been on duty disability. (PSAF #2)

On November 26, 2013, Avet's attorney John T. Bowman sent a letter to Rosemarie M. Nolan, and advised her that a letter sent to Avet dated November 14, 2013, was not postmarked until November 21, 2013 and delivered to Avet on November 23, 2013. This was two days after Avet was to report to the Sheriff's Personnel Office. Further, the attorney had requested copies of four medical IME reports which request had yet to be honored. (PSAF #19)

Avet's Dr. Angelo J. Babbo, DO, on November 20, 2013, had stated that Avet was suffering depression and Avet had continued shoulder pain, head and neck pain. (PSAF #5) Then Avet's doctor Angelo J. Babbo, DO, on December 19, 2013, stated that because of Avet's medication it renders him unsafe to travel and Avet's fear of having a bowel movement, Avet's restrictions should stay in place. (PSAF #4)

Avet then filed an official ADA request to return to active duty with accommodations on or around December of 2013. He indicated the accommodations were necessary based on his "on the job injuries." (PSAF #7) Within Avet's first request for an accommodation, he wanted any jobs that might be available to him, and that he be allowed to show them to his treating doctors

2

for their individual approval. (PSAF #8) Avet believed that after he would receive a job description, he then could take that to his treating doctors, have them review and advise what restrictions would be needed on that particular position. Then Avet would work with the Sheriff's Office on what restrictions were necessary. (PSAF #13)

On January 8, 2014, Doctor Angelo J. Babbo, had agreed with Doctor Eugene Lopez, that Avet should be allowed to only work from home as a reasonable accommodation under the ADA. (PSAF #6)   Avet's doctor Eugene Lopez, M.D., on January 20, 2014, made a determination that Avet had suffered medical injuries, that the medication he was taking Tylenol and Codeine made it so they couldn't drive and it would be unsafe for Avet to work with inmates or carry a gun. Further, the doctor disagreed with the IME and criticized the insurance company's reluctance to provide proper medical treatment as Avet's medical condition worsened. (PSAF #3)

After Avet's injuries, and inability to work, he filed a filed a worker's compensation claim for his injuries and did not receive any worker's compensation benefits. (PSAF #9) Avet had filed a worker's compensation claim for his injuries and did not receive any worker's compensation benefits until his attorney, John T. Bowman filed a motion before the Illinois Worker's Compensation Commission on February 20 2014. (PSAF #10) Avet's attorney John T. Bowman, besides notifying Rosemarie M. Nolan that Avet was still unable to return to work and of a hearing before the Worker's Compensation Commission. (PSAF #11)

Avet's attorney then advised Avet of the County's attorney who told the Worker's Compensation Committee that he would advise the County to pay worker Compensation benefits due and owing to Avet. (PSAF #12)

Further, on January 25, 2013, Avet made application for duty disability benefits with the Cook

County Pension Fund pursuant to the policy and procedure of the Cook County Sheriff's Office. (Avet Declaration (PSAF #29) Avet had Dr. Angelo Babbo provide medical documentation for his application to the Pension Board. (PSAF #30) The basis of this requirement annually is so that Avet would continue to receive pension benefit contributions. (PSAF #31) The application was not one meant to infer that Avet was totally disabled only that until the Sheriff's Office could accommodate his restrictions, Avet was just following the policy and procedures setup by the Sheriff's Office. (PSAF #32)

On May 19, 2014, Dr. Angelo J. Babbo DO, reviewed a job description for the Visitation Center, and the doctor's opinion was that Avet was not yet ready for the position. (PSAF #14) The only position that has been offered to Avet was in the Visitation Center located 23 miles from Avet's house. Avet wasn't able to take that position because of his medical restrictions of not driving more than 5-10 miles due to his medication, however, would take the position if the Sheriff would provide the accommodation of providing him transportation. Further, it would have been against his doctors restrictions had he taken the position and not had that accommodation. (PSAF #15) However, Avet had made suggestions of positions that he knew could be performed within his medical restrictions, such as tower guard or parking lot guard. (PSAF #16)

Avet believed that the failure to give him accommodations nor allowing for necessary surgeries, was from retaliation from his prior protected activities of filing of a prior EEOC and Federal Complaint Complaints. (PSAF #17) Also, Avet had been threatened with being referred to the Merit Board for firing if he failed to return to work. (PSAF #18) As part of the retaliation, Avet's medical records had been released to co-workers in violation of HIPPA regulations all done to embarrass him with the same co-workers. (PSAF #20)

4

Jim Moran was a correctional officer with the Cook County Sheriff's Office until his promotion to Correctional Sergeant in External Operations in Cook County and because of the position was fully aware of all incidents involving Sheriff Employees and all Cook County properties. (Jim Moran Declaration (PSAF #21) George Avet worked with Moran from May of 2005 until May of 2010. (PSAF #22). On or about January 21, 2013, Moran became aware of George Avet being injured while working in the 26th and California lock-up by high risk prisoners. (PSAF #23) George Avet told Moran of his injuries to his neck, head and back, (PSAF #24) Around February of 2013, George Avet informed Moran of his work restrictions on lifting, limited driving and no contact with prisoners because of his on the job injuries. (PSAF #25) Avet also informed Moran that he was unable during the periods February of 2013 through 2014, of receiving an assignment because of his restrictions and limited driving. (PSAF #26)

Moran was personally aware that in Rolling Meadows and Skokie both had correctional Officers detailed to Booking officer positions and aware that the policy and procedures of the Cook County Sheriff's Office was there were light duty positions in an employee's home department or detail or in another division. (PSAF #27) Moran personally saw correctional employees without disabilities assigned to light duty positions at Skokie and Rolling Meadows from February of 2013 through 2014. Some of the Officers so assigned were Joseph O'Brien assigned to Skokie during 2013 through 2014; Henry Mockus, correctional officer assigned to Rolling Meadows from 2013 to the present; Edwardo Garcia, correctional officer assigned to Skokie from 2013 to the present; Robert Scafidi., correctional officer assigned to Rolling Meadows from 2013 to the present and; Steve Kalatus, correctional officer assigned to Skokie to the present. (PSAF #28)

                A.        **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ.P.*56.

To prevail on a motion for summary judgment, the Defendants must identify the relevant portions of pleadings, depositions, answers to interrogatories, and other admissible evidence which demonstrate that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, then the responding party must present specific facts that create a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986): *Bay v. Cassens Transport Co*., 212 F. 3d 969, 972 (7th Cir. 2000). Summary judgment is not favored if issues of intent, good faith, or subjective feelings play an important role in determining the issues because these issues are usually not capable of being resolved by summary judgment. *White Motor Co. v. United States*. 372 U.S.253, 259 (1963); *Kephart v. Institute of Gas Technology*, 630 F. 2d 1217, 1218 (7th Cir. 1980); *Beard v. Whitley County REMC,* 840 F. 2d 405, 410 (7th Cir. 1988).

In *Sischo-Nownwjad v. Merced Community College*, 934 F. 2d 1104, 1110 (9th Cir.). the court explained that the plaintiff need only show that discrimination played a motivating part in the adverse action. The plaintiff needs "very little" evidence for a prima facie case. Id at 1110-11. When the plaintiff raises more evidence than is needed for a prima facie case, summary judgment should normally be denied even if the employer articulates a non-discriminatory reason for its actions because the plaintiff will "necessarily" have raised a genuine issue of fact as to the validity

of the defendant's articulated reason. Id at 1111. Plaintiff may also submit additional evidence strengthening the inference of discrimination from the prima facie case in order to prove pretext. See *Texas Dept. of Commercial affairs v. Burdine*, 450 U.S. 250, 252-53 (1981); *Norris v. Baxter Health Care,* 49 F.E.P. 176, 177 (N.D. Ill. 1988). Pretext can be proven by showing that the defendant's articulated reason did not actually motivate its decision, that the articulated reasons have no basis in fact, or that the alleged reasons were insufficient to motivate actions against plaintiff. *Collier v. Budd Co.,* 66 F. 3d 886,892 (7th Cir. 1995).

## ARGUMENT

The Defendants' motion for summary judgment cannot rest upon the mere denials of Avet's pleadings, but must set forth specific facts showing that there is no genuine issue for trial. In the case at bar, the Affidavits submitted in support of the Defendants' motion for summary judgment contain nothing more than denials No real evidence has been submitted that would preclude a jury finding of discrimination on the part of the Defendants.

The Courts have held that "merely attaching exhibits . . . is inadequate to establish or contradict the fact(s) subject to dispute." *Fedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1069 (8th Cir. 2005) (citing *Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1085 (8th Cir. 1999). The issue of material facts required by Rule 56(c*)* to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. Fed. R. Civ. P. 56 (c) provides that, when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial.

### Summary Judgment is not Appropriate in Plaintiff's Disability Discrimination Claim and was Disabled based upon the ADA and Defendants' did not give any

7

**reasonable accommodations.**

**A. DISABILITY CLAIM COUNT I (Failure to Accommodate)**

To establish a discrimination claim based upon a failure to accommodate, Plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) his employer was aware of his disability and (3) the employer failed to reasonable accommodate the disability. *E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005); *Rauen v. United States Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895-96 (7th Cir. 2003). Avet's disability of a physical impairment injuries to his left shoulder, left arm strain and a traumatic brain concussion (permanent disability) and then was off duty from January of 2013 until the present and has been on duty disability. (PSAF #2) See, e.g., *Sears, Roebuck & Co*., 417 F.3d at 799; 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(i). Similarly, it is undisputed that, despite his disabilities, Plaintiff is a "qualified individual" since he was able to perform the essential functions of jobs that are available by an accommodation and that the Defendants were aware of positions Plaintiff could perform. (To be discussed below in a separate section).

Plaintiff's attorney told Director of Personnel, Rosemary Nolan, about Avet's disability that he didn't feel he was ready to return to work based on his disability. PSAF #11.

With the above being said, the Plaintiff believes that the Defendants' violated their own ADA Policy and Procedure. It is important for the understanding of what is a "reasonable accommodation," under 42 USCS ¶ 121119:

> (9) Reasonable accommodation. The term "reasonable accommodation" may include—
> (B) job restructuring, part-time or *modified work schedules, reassignment to a vacant position*, (emphasis added) acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

8

Under the ADA, the employer's duty to reasonably accommodate an employee's disability is triggered when the employee initially informs the employer of his disability - which requires at most that "the employee indicate to the employer that he has a disability and requires accommodation." *Sears, Roebuck & Co.*, 417 F.3d at 802; *Beck v. Univ. of Wisc. Bd. Of Regents,* 75 F.3d 1130, 1134 (7th Cir. 1996).

Also under the ADA, there exist two distinct categories of discrimination claims: failure to accommodate and disparate treatment. *Sieberns v. Wal-Mart Stores Inc.,* 125 F3d 1019, 1021-22 (7TH Cir. 1997). Plaintiff has set forth *prima facie* case for the failure of the Defendants to accommodate and enter into an "interactive process" with him. Plaintiff is not required to use the direct or indirect method for his disability *prima facie* case based upon *Bultemeyer v. Fort Wayne Community Schools*, 100 F 3d, 1281 (7th Circ. 1996)

The employer's duty to "reasonable accommodate" an employee with a disability can mean that, under certain circumstances, an employee will be given a "preference' in the sense that it would permit the worker with a disability to violate a rule that others must obey." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 398, 122 S.Ct. 1516, 1521, 152 L.Ed.2d 589 (2002). These could include otherwise "facially neutral" rules such as those regarding office assignments, work breaks, budget rules, attendance policies, and physical fitness. *Id*. at 397-398.

After the employer is informed of an employee's disability and the need for reasonable accommodation, the ADA contemplates that the employer and employee will engage in an "interactive process by which the employer and employee determine the appropriate reasonable accommodation." *Sears, Roebuck & Co.,* 417 F.3d at 797, 805; *Beck,* 75 F.3d at 1135; *Bombard v. Fort Wayne Newspapers, Inc*., 92 F.3d 560, 563 (7th Cir.1996); 29 C.F.R. § l630.2 (o)(3). The employer's duty to initiate this interactive process occurs when the employer becomes aware of

performance problems which may be due just to the employee's disability. *Bultemeyer at 1284*. This interactive process "requires a great deal of communication between the employer and the employee. "*Id*. at 1285. When, as here, there is a reasonable accommodations that did exist, (discussed below) an employer who causes a breakdown of the interactive process is liable under the ADA for failing to reasonably accommodate the employee's disability. See, e.g. *Sears, Roebuck & Co*., 417 F.3d at 808; *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000). A breakdown can occur if a party is not acting in good faith or is demonstrably acting in bad faith. *Bultemeyer* at 1285; *Beck* at 1135. A party is not acting in good faith if it does not help the other party determine what specific accommodations are necessary or obstructs or delays the interactive process. *Id.* A party may be acting in bad faith if it fails to communicate by way of initiation or response. Id. An employer "cannot sit behind a closed door and reject the employee requests for accommodation without explaining why the requests have been rejected or offering alternatives." *Sears, Roebuck & Co*., 417 F.3d at 806; Gile at 374.

Although the interactive process is not an end itself, the 7th Circuit has previously upheld judgments against employers, or precluded summary judgment for employers, in cases where there was an issue as to whether the employer engaged in an appropriate interactive process or caused such a process to breakdown. See, e.g. *Johns v. Laidlaw Education Services,* 199 Fed. Appx. 568; 2006 U.S. Lexis 25513 *3 (7th Cir. 2006);*Westlake et al. v. Excel Corporation,* 1998 U.S. App. LEXIS 21086 at *8, (7th Circ. 1998); *Baert v. Euclid Beverage*, 149 F. 3d 626, 633 (7th Cir. 1998); *Haschmann v. Time Warner Entertainment Co*., 151 F3.d 591 (7th Cir. 1998); *Hendricks-Robinson v. Excel Corp.,* 154 F.3d 685, 699-700 (7th Cir. 1998); *Baert,* 149 F.3d at 633-34; *Bultemeyer*, 100 F.3d at 1285-87. In the aforementioned cases, the 7th Circuit found potential liability based on an employer's failure to engage in an interactive process in circumstances where the plaintiff alleged

10

that the result of that breakdown was the employer's failure to provide a reasonable accommodation. Within Avet's first request in the interactive process for an accommodation, Avet wanted any jobs that might be available to him, and that he be allowed to show them to his treating doctors for their individual approval. (PSAF #8) Avet believed that after he would receive a job description, he then could take that to his treating doctors, have them review and advise what restrictions would be needed on that particular position. Then Avet would work with the Sheriff's Office on what restrictions were necessary. (PSAF #13) Only one (1) position was given him in the Visitation Center, which was clearly outside his restrictions. (PSAF #15) Avet did make recommendations of positions he thought would be within his restrictions. (PSAF #16)

Similarly, if the employer does provide an accommodation, under the ADA, the employer is obliged to provide an accommodation that effectively accommodates the disabled employee's limitations. *Sears, Roebuck & Co.*, 417 F.3d at 802; *Barnett,* 535 U.S. at 400, 122 S. Ct. at 1523 ("An ineffective modification or adjustment will not accommodate a disabled individual's limitations."). Here Plaintiff's attempted to return to work and the Defendants did give an unreasonable accommodation to Plaintiff in the Visitation Center, which clearly violated his restrictions.

## B. JOB'S WERE AVAILABLE WITHIN AVET'S RESTRICTIONS

As stated in our Undisputed Facts above, Moran was personally aware that in Rolling Meadows and Skokie both had correctional Officers detailed to Booking officer positions and aware that the policy and procedures of the Cook County Sheriff's Office was there were light duty positions in an employee's home department or detail or in another division. (PSAF #27) Moran personally saw correctional employees without disabilities assigned to light duty positions at Skokie and Rolling Meadows from February of 2013 through 2014. Some of the

11

Officers so assigned were Joseph O'Brien assigned to Skokie during 2013 through 2014; Henry Mockus, correctional officer assigned to Rolling Meadows from 2013 to the present; Edwardo Garcia, correctional officer assigned to Skokie from 2013 to the present; Robert Scafidi., correctional officer assigned to Rolling Meadows from 2013 to the present and; Steve Kalatus, correctional officer assigned to Skokie to the present. (PSAF #28)

### C. DISABILITY CLAIM COUNT II (Retaliation)

To state a claim for retaliation under Title VII, the ADA, or the ADEA, a plaintiff must allege: 1) that he engaged in a statutorily protected activity; 2) that he suffered an adverse employment action; and 3) that there was a causal link between the protected activity and the employer's action. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997).The facts as presented in Plaintiff's Rule 56 Statement of Additional Facts will support Avet's discrimination claims under the indirect method. Plaintiff has offered "bits and pieces from which an inference of discriminatory and/or retaliatory intent might be drawn" and other evidence, "whether or not rigorously statistical." Plaintiff asserts that he has presented evidence under the indirect method by showing that similarly situated employees not in the protected group received systematically better treatment when they were not formally treated the same way or supervised the same was as Plaintiff. See *Troupe v. May Dept. Stores Co.,* 20 F3d 734, 736 (7th Cir. 1994).

In *Troupe* Judge Posner warned that the courts must take a sort-of-"holistic approach" and look at the case as a whole. The courts must focus on "bits and pieces" of evidence and determine if, when viewed together, there is enough evidence to suggest that the case should move forward. 20 F.3d at 736.

The ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), uses comparable language to that of Title VII, 42 U.S.C § 2000e-3(a), Title VII retaliation cases provide guidance for the assessment of ADA retaliation claims. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998). The anti-retaliation provision of Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). When an employee complains to management that they believe the employer has engaged in employment discrimination, this communication is protected under the "opposition" clause of the anti-retaliation provision. *Crawford v. Metro. Gov't. of Nashville*, 129 S. Ct. 846, 851, 172 L. Ed. 2d 650 (2009). Requests for accommodations are likewise statutorily protected. *See Cassimy*, 461 F.3d at 938. Here Avet believed that the failure to give him accommodations nor allowing for necessary surgeries, were from retaliation from his prior protected activities of filing of a prior EEOC and Federal Complaint Complaints. (PSAF #17)

The Seventh Circuit clarified the standard for summary judgment where a plaintiff claims that he/she was retaliated against for engaging in protected activity. *Stone v. City of Indianapolis Public Utilities Division*, 281 F. 3d 640,642 (7th Cir. 2001). Under the analysis in <u>*Stone,*</u> a Defendant is not entitled to summary judgment if Plaintiff shows that: 1) after lodging a complaint about discrimination; (2) only he, and not any otherwise similarly situated employee who did not complain, was; (3) subject to an adverse employment action even though; (4) he was performing his job in a satisfactory manner, unless; (5) the Defendants present evidence of

a non-discriminatory reason for the adverse action. As succinctly noted in <u>Stone</u>, "The fact that the Defendant may be able to submit some minuscule evidence that the Avet was not treated differently for some lawful reason or, retaliated against, just creates an issue of fact. Evidence, though not conclusive, that the cause of the failure to accommodate was retaliation, should be enough to entitle the plaintiff to jury trial. <u>Id</u> at 643. Further, the fact that a Defendant may be able to present a non-discriminatory reason, however, does not end the analysis under Title VII. In *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 3742 (1993) the Supreme Court directly addressed the Plaintiff's burden in responding to the non-discriminatory reasons proffered by an employer in support of its actions. Specifically, the Court held that, "Plaintiff may avoid summary judgment by creating a genuine issue of material fact as to whether an employer's stated reason for its employment decision is the true reason or merely a pretextual explanation. The fact finder's disbelief of the reasons put forth by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." The Court in <u>Hicks</u> 509 U.S. at 511. Accord; *Anderson v. Baxter Healthcare Corp*, 13 F. 3d 1120, 1123-24 (7th Cir. 1994) (summary judgment inappropriate where plaintiff can demonstrate a genuine issue of material fact exists as to whether the employer's stated reason for its employment decision is the real reason); *Visser v. Packer Engineering Assoc. Inc*., 925 F 2d655, 567 (7th Cir. 1991) (where an employer offers a pretext or "phony" reason, the trier of fact is permitted, although not compelled, to infer that the real reason for the personnel action, was discrimination); *Etim U.Aka v. Washington Hospital Center*, 156 F 3d 1284 (D.C. Cir. 1998)

14

(employment discrimination plaintiffs are not required to submit evidence over and above rebuttal evidence sufficient to avoid summary judgment).

Here we have a work environment of retaliation. A work environment of retaliation is one that was so "pervasive" that it "alter[ed] the conditions of employment and creat[ed] an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). While the parties appear to be in general agreement about the applicable legal standards, the facts surrounding Avet's claims are largely in dispute. Taken in Avet's favor, the facts establish that the Defendant subjected Avet to a pervasive pattern of retaliation.

Plaintiff is not required to establish that he was treated differently than other employees. In *Leffel v. Valley Financial Services*, 113F.3d787, 793-94 the court ruled that a plaintiff is not required to identify a comparative employee outside the protected to create a class prima facie case. The court explained that the plaintiff need only present such evidence that raises a "logical connection" between the act in question and the discriminatory motive at issue. Id.; O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996).

## **CONCLUSION**

There are too many facts in dispute here for there to be an innocent explanation of why Plaintiff was treated with such great disrespect and put into harm's way intentionally. The claim of the Defendants just doesn't make sense. Clearly, after Plaintiff having been a faithful and conscientious employee, things just do not add up.

WHEREFORE, Defendant's Motion for Summary Judgment must be denied.

``
Respectfully submitted,

George Avet
 **/s/ Michael T. Smith**
Michael T. Smith
Trial Attorney
440 W. Irving Park Road
Roselle, Illinois 60172
847-895-0626

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that on November 2, 2015, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of this filing of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, to the following:

Patricia M. Fallon
Assistant Cook County State's Attorney
500 Richard J. Daley Center.
Chicago, Illinois 60602

BY:s/Michael T. Smith
Michael T. Smith

Michael T. Smith #6180407IL
Attorney for Plaintiff
440 W. Irving Park Road
Roselle, IL 60172
(847) 895-0626