IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |
|---|---|
| ███████, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14 C 4555 |
| ) | |
| THOMAS J. DART, in his official capacity ) | Judge Rebecca R. Pallmeyer |
| as COOK COUNTY SHERIFF and ) | |
| COUNTY OF COOK, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff ███████ a correctional officer in the Cook County Sheriff's Office, has alleged that Defendants Thomas J. Dart and Cook County violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), by failing to accommodate his alleged disability and engaging in retaliation. Defendants have moved for summary judgment [38]. For the reasons set forth below, their motion is granted.

## FACTUAL BACKGROUND

The facts are taken from Defendants' Rule 56.1 Statement of Material Facts ("DSF") [40], as well as Plaintiff's Statement of Additional Undisputed Facts ("PSAF") [51]. Plaintiff began working for Defendants as a correctional officer in May 2005. In that position, Plaintiff is responsible for "observ[ing] and supervis[ing] the behavior of detainees confined to Cook County's Correctional Institutions[,] . . . mak[ing] rounds of assigned area to insure that all security procedures are adhered to and all detainees under surveillance are accounted for[,]" and "perform[ing] a variety of other related duties to assist with jail operations." (DSF [40] ¶¶ 1, 7.) On January 18, 2013, Plaintiff sustained injuries to his left shoulder and neck, as well as left arm strain and a severe traumatic brain concussion, when he intervened in a fight between two inmates at the Cook County Jail. (*Id.* ¶¶ 18–19.) As a result of this injury, Plaintiff has received



temporary total disability worker's compensation benefits since January 19, 2013. (*Id.* ¶¶ 22–24.)

Beginning a few months after his injury, at the direction of Cook County's Risk Management Department, Plaintiff had a number of Independent Medical Examinations (IMEs) in order to determine the extent of his disability and whether he could return to work. Dr. David H. Garelick, an orthopedic surgeon, performed IMEs on Plaintiff in April 2013, July 2013, and October 2013. (Dr. Garelick's December 11, 2013 Addendum, DSF Group Ex. 4.) During his October 14, 2013 examination, Dr. Garelick concluded that Plaintiff could return to work with the following restrictions: that he (1) not reach, climb, or crawl with his left arm; (2) limit any grasping, pushing, and pulling with his left arm; (3) not lift more than ten pounds at a time; and (4) refrain from performing overhead work with his left arm. (*Id.* ¶ 27 (citing Dr. Garelick's October 14, 2013 IME, DSF Group Ex. 4).)[1]

On November 13, 2013, Michael Drew, an employee in Cook County's Risk Management Department, wrote to Plaintiff, advising him that Dr. Garelick's October 14, 2013 examination showed that Plaintiff could return to work on a restricted basis. (*Id.* ¶ 33 (citing Letter from Michael Drew, Risk Management, November 13, 2013, DSF Ex. 5).) Plaintiff also received a letter from Rosemarie Nolan, Cook County Sheriff's Office Director of Personnel,

---

[1] Dr. Garelick appears to have later changed his opinion regarding Plaintiff's restrictions. On October 23, 2013, Plaintiff underwent an IME by Dr. David Hartman, a medical and forensic neuropsychologist. (Dr. Garelick's December 11, 2013 Addendum, DSF Group Ex. 4.) Dr. Hartman concluded that Plaintiff was "malingering," making what Dr. Hartman described as the "voluntary choice to stimulate a disability for secondary gain." (*Id.*) Dr. Julie Wehner, an orthopedic and spine surgeon, also performed an IME on Plaintiff, on October 28, 2013. She too observed that Plaintiff's "subjective complaints [did] not match up with the clinical examination and the radiographic findings." (DSF ¶ 28 (citing Dr. Wehner's October 28, 2013 IME, DSF Group Ex. 4).) Based on her examination of Plaintiff and review of Plaintiff's medical records, Dr. Wehner concluded that he could return to work without any restrictions. (*Id.*) On December 11, 2013, Dr. Garelick issued an Addendum to his IME in which he reviewed his own previous work as well as the IMEs of Drs. Hartman and Wehner, and concluded that Plaintiff could be released to work without restrictions. (*Id.* ¶ 30.) Dr. Garelick offered no specific explanation for this change in his recommendation.

2

dated November 14, 2013, directing that he return to work and report to the Sheriff's Personnel Office on or before November 21, 2013.² (*Id.* ¶ 34; PSAF [51] ¶ 19.)

Plaintiff did not return to work, but instead filed a written request for ADA accommodation from the Sheriff's Department on or about December 2, 2013, asserting that accommodations were necessary due to his "on the job injury" and medical conditions that "affect[ed] [his] daily ability to function." (PSAF ¶ 7; PSAF Group Ex. J at 2.) Mr. Drew responded in a letter dated December 17, 2013. By this time, Dr. Garelick had revised his assessment of Plaintiff's condition, concluding on December 11, 2013, that Plaintiff could return to full duty with no restrictions, and Mr. Drew took that position in his letter. (*Id.* ¶¶ 30, 36 (citing Letter from Michael Drew, Risk Management, dated December 17, 2013, DSF Ex. 6).) Plaintiff testified that Ms. Nolan provided him with additional time to comply with these return-to-work notification letters, so that Plaintiff could obtain medical evaluations from his treating physicians. (*Id.* ¶ 74 (citing ▬ Dep. at 113).)

Plaintiff did subsequently meet with his treating doctors, who concluded that his disability prevented Plaintiff from returning to full-duty work. Dr. Angelo Babbo, an osteopath, examined Plaintiff on December 19, 2013, and concluded that Plaintiff's injury rendered him unable to perform any lifting with his left arm. (Dr. Babbo Letter, December 19, 2013, PSAF Ex. B.) He also opined that Plaintiff was "unable to travel far from home due to two reasons—first, his medications," which included the antidepressant Bupropion (Dr. Babbo Letter, November 20, 2013, PSAF Ex. C), "ma[de] him drowsy and render[ed] him unsafe to drive while taking them and second, his [gastrointestinal] complaints [made] him fearful of having a bowel movement," (Dr. Babbo Letter, December 19, 2013, PSAF Ex. B.) On January 6, 2014, Plaintiff met with Dr. Eugene Lopez, an orthopedic surgeon, who provided Plaintiff with medication and a treatment

---

² Plaintiff contends that, although this letter was dated November 14, 2013, it was not postmarked until November 21, 2013 and not delivered to Plaintiff until November 23, 2013. (PSAF ¶ 19.) The precise date on which Plaintiff received the letter, however, is not material to this dispute.

3

plan for his injury. Dr. Lopez concluded that the medications being prescribed to Plaintiff would make it unsafe for Plaintiff to drive, and that Plaintiff could not safely work with inmates or carry a gun.[3] (Dr. Lopez Examination Report, January 6, 2014, PSAF Ex. A.) Accordingly, Dr. Lopez stated that Plaintiff "should work from home only and perform sedentary tasks." (Id.) Dr. Babbo, the doctor with whom Plaintiff had met on December 19, 2013, agreed with this assessment and recommended, on January 8, 2014, that "a reasonable accommodation under the ADA . . . would be to allow [Plaintiff] to work from home." (Dr. Babbo Letter, January 8, 2014, PSAF Ex. D.)

Based on his doctors' driving restrictions, Plaintiff asked Ms. Nolan, the Director of Personnel, to provide him with reasonable accommodation under the ADA by reassigning him to the Sheriff's Department's Court Services division in either the Rolling Meadows or Skokie courthouse, both of which were located within a ten-mile radius of Plaintiff's home in ▮▮▮ ▮▮▮, Illinois.[4] (DSF ¶¶ 46–47 (citing ▮▮ Dep. 63–64).) Plaintiff also testified that, based on his doctors' restrictions, he sought an ADA accommodation of a position requiring no inmate contact. (Id. ¶ 58–59 (citing ▮▮ Dep. at 95).) The precise date on which he made this request is not in the record, but in January 2014, Ms. Nolan offered Plaintiff a position in the Visitation Center, located in Division V of the Jail, in response to Plaintiff's ADA request.[5] (Id. ¶ 50; PSAF

---

[3] These medications were Mobic, Prilosec, Ultram ER, Dendracin cream, Neurontin, Ambien, and Tylenol-Codeine. (PSAF Ex. A.)

[4] Plaintiff testified that he requested the courthouse accommodation because his doctors recommended that he not work more than "five to ten miles" from his home. (▮▮ Dep. at 64.) Plaintiff's doctors' reports make no reference to a five or ten-mile driving restriction, however; they recommend only that he refrain from driving significant distances because of his medications and fear of having a bowel movement. (PSAF Exs. A, B & C.)

[5] In his response to Defendants' Rule 56.1 Statement, Plaintiff contends that he did not recall the position being "offered" to him in January 2014. (Pl.'s Resp. to DSF ¶ 50.) In his deposition, however, Plaintiff testified that Ms. Nolan "offer[ed] that it was a position" (▮▮ Dep. ¶ 77), and in a February 10, 2014, letter from Plaintiff to Ms. Nolan, Plaintiff acknowledged that the position had been "offered" to him. (Letter from ▮▮▮▮ to Rosemarie Nolan, February 10, 2014, PSAF Ex. J.)

4

¶ 15.) Ms. Nolan believed the Visitation Center position would "accommodate [Plaintiff's] restrictions." (Nolan Aff. at 4, DSF Ex. 7.) The Visitation Center position would have required Plaintiff to answer phones, but was located some 20 to 23 miles from Plaintiff's house. (PSAF ¶ 15; ▬ Dep. at 79.) Terrance Coughlan, a Deputy Chief in the Sheriff's Bureau of Human Resources, also discussed the job with Plaintiff. (DSF ¶¶ 51–53.) According to Plaintiff, this conversation with Mr. Coughlan took place around May 9, 2014. (▬ Dep. at 77–78.) On May 19, 2014, Plaintiff asked one of his treating doctors, Dr. Babbo, to review the Visitation Center job description. (Letter from Dr. Babbo to Mr. Coughlan, May 19, 2014, PSAF Ex. G.) In a written letter to Mr. Coughlan that same day, Dr. Babbo expressed his concern that Plaintiff was "not yet ready to return to any kind of duty," but did not convey any reservations specific to the Visitation Center position. (Id.) Plaintiff states that he would have accepted the Visitation Center position at the Jail if Defendants had provided him with transportation. (PSAF ¶ 15.) At his deposition, however, Plaintiff testified that he rejected the Visitation Center position not only because it was outside of his "driving radius," but also because it would have involved "exposure to inmates"[6] (▬ Dep. at 77–78), which would have contravened his doctors' recommendations. (DSF ¶¶ 56–58; PSF ¶ 15.)

Jim Moran, a correctional officer with the Sheriff's Office, was aware of Plaintiff's injuries and work restrictions and claims to have personal knowledge that at least five correctional employees without disabilities were assigned to "light-duty" positions at the Skokie or Rolling Meadows courthouses since early 2013. (PSAF ¶ 28.) Plaintiff had also heard of such assignments "through the grapevine." (DSF ¶ 48 (quoting ▬ Dep. at 91).) Ms. Nolan and Mr. Coughlan both attest, however, that there were no "ADA positions" or "restricted duty" positions at either suburban courthouse. (Id. ¶¶ 7, 47, 51; Nolan Aff. at 2, 4, DSF Ex. 7; Coughlan Aff.

---

[6] Plaintiff contends that correctional officer positions at the Jail exist that do not require inmate contact, such as working as a tower guard, parking lot guard, or working in "external operations." (PSAF ¶ 16; ▬ Dep. at 95–96.) Defendants have not addressed whether these positions exist or whether they involve inmate contact—but the court notes that Plaintiff's driving restriction would preclude his working in any position at Cook County Jail.

5

at 2, DSF Ex. 8.) An "ADA position," according to Ms. Nolan, is a position reserved for individuals who are qualified for those positions based on their disabilities. (Nolan Aff. at 2.) Michael Holmes, First Assistant Executive Director in the Cook County Department of Corrections, filed an affidavit explaining that correctional officers from the Jail who were transferred to the Rolling Meadows and Skokie courthouses in 2013 received their positions as part of the County's "Remote Booking" program, which involved transferring correctional officers specially trained in reading "handwritten court mittimus" to the suburban courthouses in order to assist with the detainee intake process. (Holmes Aff. at 2–3, Reply Br. [56] Ex. B.) According to Mr. Holmes, these officers' main responsibilities included ensuring that detainees were being processed correctly, interpreting court mittimus documents, and establishing a policy and procedure for the release of Cook County Department of Corrections inmates and other detainees from courthouse lock-ups. (*Id.*) Mr. Holmes asserts that these jobs required the officers to have regular inmate contact (*id.*), an aspect of the position that neither Plaintiff nor his colleague Jim Moran have addressed.

On December 10, 2013—days before receiving Mr. Drew's second letter, and well before Ms. Nolan offered the Visitation Center position—Plaintiff filed Equal Employment Opportunity Commission ("EEOC") charges against the Sheriff's Office, alleging that the Sheriff's Office had discriminated against him based on his disability "by failing to accommodate his doctors [*sic*] restrictions."[7] (Am. Compl. [23] Ex. A at 7.) Plaintiff further alleged that the Sheriff's Office had retaliated against him for EEOC charges that Plaintiff had filed against the Office in 2012.[8] (*Id.*; ▇▇▇ Dep. at 126–27.) He received a right-to-sue letter on March 16, 2014 (Am. Compl. Ex. B at 8), and brought this action [1] on June 17, 2014.

---

[7] Although the EEOC charges were filed on December 10, 2013, Plaintiff signed the EEOC complaint on December 6, 2013. (DSF Ex. A.)

[8] Further details relating to Plaintiff's prior EEOC charges were not provided in Plaintiff's December 10, 2013 filing with the EEOC, nor are they in the record.

6

In his amended complaint, filed on May 5, 2015, Plaintiff alleges a failure-to-accommodate claim and a retaliation claim under the ADA. Specifically, Plaintiff complains that Defendants refused to provide him with a reasonable accommodation for his inability to drive as a result of his disability. (Am. Compl. ¶¶ 10–12.) He offers as evidence of retaliation the facts (1) that he had filed a previous EEOC charge against the Sheriff's Office and (2) that Ms. Nolan had sent him letters warning that he would be terminated if he did not follow return-to-work procedures. (DSF ¶¶ 70, 72 (citing ▬▬ Dep. at 129, 134–35).) Plaintiff also offers Ms. Nolan's letters as evidence of a hostile work environment at the Sheriff's Office. (Id. ¶¶ 76–78 (citing ▬▬ Dep. at 137–38).) Defendants contend that they are entitled to summary judgment because Plaintiff is unable to meet his burden of proof regarding any of his claims. (Defs. Mot. at 1.)

## DISCUSSION

The court will grant summary judgment if the record shows that there is no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

### A. Plaintiff's Failure-to-Accommodate Claim

To establish a prima facie failure-to-accommodate case under the ADA, a plaintiff must show "that (1) he is a qualified individual with a disability, (2) [the defendant] was aware of his disability, and (3) [the defendant] failed to reasonably accommodate his disability." *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 852 (7th Cir. 2015) (citing *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014)). Because an ADA plaintiff carries the burden of proof at trial, it is Plaintiff's burden, in rebutting Defendants' Rule 56.1 filings and supporting memoranda, to establish that a genuine issue of material fact exists at the summary

judgment stage. *See, e.g., Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986)).

Plaintiff has failed to meet that burden, and his failure-to-accommodate claim cannot survive summary judgment. The court notes, first, that it is not clear, on this record, that Plaintiff is disabled within the meaning of the ADA. Under the ADA, an individual has a "disability" if that person has a "physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(A), but can nevertheless perform his job with or without an accommodation. A physical or mental impairment may be a disability if it limits such activities as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," or the operation of a major bodily function. 42 U.S.C. § 12102; 29 C.F.R. § 1630.2(i). At least prior to the adoption of the Americans with Disabilities Act Amendments Act ("ADAAA"), driving itself was not deemed a major life activity. *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009); *cf. Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 606 n.3 (7th Cir. 2012). An individual's inability to drive could create a disability, but only "if it caused [a substantial] impairment of a major life activity," such as working. *Winsley*, 563 F.3d at 604. But to show that a driving restriction substantially interferes with his ability to work, plaintiff must demonstrate that it significantly restricts his "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Carothers v. County of Cook*, 808 F.3d 1140 (7th Cir. 2015), citing *Povey v. City of Jeffersonville*, 697 F.3d 619, 623 (7th Cir. 2012); *see also* 29 C.F.R. § 1630 Appendix. Furthermore, a limitation "in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working." 29 C.F.R. § 1630 Appendix. The fact that plaintiff is unable to perform a particular job for a particular employer is ordinarily "not sufficient to establish a substantial limitation on the ability to work; rather, the impairment must substantially limit employment generally." *Powers v. USF Holland, Inc.*, 667 F.3d 815, 821 (7th Cir. 2011) (internal citations omitted).

8

Plaintiff's complaint alleges that Defendants failed to provide him with reasonable accommodations for his driving restrictions, but he offers no basis for the conclusion that the driving restriction genuinely interferes with his ability to work. *See Povey,* 697 F.3d at 623 (7th Cir. 2012) ("To demonstrate that [he] is substantially limited in the activity of working," a plaintiff at the summary judgment stage ordinarily "must provide some proof on the number and types of jobs within the geographical area to which the [claimant] has reasonable access.") (internal citations and quotations omitted). Plaintiff has presented no evidence from which the court could find that his inability to drive significant distances limits his ability to perform a class of jobs or a broad range of jobs in various classes.

Because a job "class" generally means a job that "utiliz[es] an individual's skills," *Squibb v. Memorial Medical Center,* 497 F.3d 775, 782 (7th Cir. 2007) (internal quotation and citation omitted), the court assumes that the relevant job class in this case is a security position with the Sheriff's Office or for another public or private employer. There is no evidence that Plaintiff's inability to drive more than ten miles from his home substantially limits his ability to perform this class of job. Presumably, security guards are employed in a large number of business banks and retail establishments near Plaintiff's home, or accessible via public transportation.

Although Plaintiff's amended complaint alleges only that Defendants failed to accommodate his driving restrictions, Plaintiff also contends, in response to Defendant's motion for summary judgment, that Defendants failed to accommodate his restrictions on inmate contact and carrying a weapon.[9] The court concludes that these restrictions also do not render Plaintiff disabled under the ADA. In *Carothers v. County of Cook,* the plaintiff Carothers, a

---

[9] According to Plaintiff, he had also mentioned to his colleague Jim Moran that he had work restrictions on lifting. (Pl.'s Br. at 5.) A lifting restriction might render Plaintiff disabled under the ADA, *see* 42 U.S.C. § 12102(2)(A) (defining lifting as a major life activity), but it is not mentioned in Plaintiff's complaint, nor has Plaintiff argued that he would have been required to engage in prohibited lifting had he accepted the position that Defendants offered him in the Visitation Center.

9


juvenile correctional center employee, brought a lawsuit against Cook County and the Office of Transitional Administrator under the ADA, alleging that the defendants discriminated against her based on her disability: an "anxiety disorder" that precluded plaintiff from "exposure to and interactions with teenagers." 808 F.3d 1140, 1147 (7th Cir. 2015). The Seventh Circuit concluded that Carothers' anxiety disorder was not a disability within the meaning of the ADA because "interacting with juvenile detainees is a *unique aspect* of the *single specific job* of working as a hearing officer at a juvenile correctional center." *Id.* at 1148 (emphasis original). Accordingly, while her disorder may have prevented Carothers from working at the juvenile detention center, it did not restrict her ability to work in a class of jobs or a broad range of jobs. *Id.* The same reasoning applies here. Interacting with inmates and carrying a weapon are unique aspects of the job of a correctional officer at the Cook County Jail (and other detention facilities). While Plaintiff's inability to interact with inmates and carry a weapon may prevent him from holding that specific job, he may still obtain other correctional officer or security officer positions that do not impose these requirements.

At oral argument on this motion, Plaintiff's counsel emphasized that, to the extent he is uncertain what other positions Cook County should have offered him, it is because Cook County officials failed to engage in the "interactive process" to assist Plaintiff in finding a job he could perform. The interactive process prescribed by the ADA "is not an end in itself," however. *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000). Rather, "it is a means for determining what reasonable accommodations are available," and Plaintiff retains the burden, on summary judgment, of showing that there is an available accommodation that could have been achieved. *Id.*; *see Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 856-57 (7th Cir. 2015) (where an ADA plaintiff requests reassignment, in order to survive summary judgment, plaintiff must show that vacancy to survive summary judgment existed at time of accommodation request). On this record, it does not appear that the interactive process failed due to Defendants' unwillingness. Instead, the court takes notice that just four days after Plaintiff made

his initial ADA accommodation request, he filed an EEOC charge against Defendants, alleging that they had failed to accommodate his disability. Defendants' purported failure to engage in an interactive process does not preclude summary judgment in this case.

**B. Plaintiff's Retaliation Claim**

The court's conclusion that Plaintiff is not disabled does not foreclose Plaintiff's claim that Defendants retaliated against Plaintiff for his EEOC charge. *See Squibb*, 497 F.3d at 786 ("The [ADA] prohibits an employer from retaliating against an employee who has raised an ADA claim, whether or not that employee ultimately succeeds on the merits of that claim." (citing *Cassimy v. Bd. of Ed. of Rockford Pub. Schools*, 461 F.3d 932, 938 (7th Cir. 2006))). In bringing a retaliation claim, Plaintiff was required to show that: (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the two. *Id.* (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006)). The court will assume that Plaintiff engaged in a protected activity by filing his EEOC charge, but Plaintiff has not identified any adverse employment action in this case. He has continued to collect disability benefits, and remains officially employed as a correctional officer for Defendants. He does not assert that he was fired, demoted, or deprived of pay or benefits as a consequence of his EEOC action. Evidence of non-accommodation (in this case, Defendants' offer of just one job, at the Jail rather than within a few miles of Plaintiff's home) cannot do "double duty" as evidence of an adverse employment action. *See Pack v. Ill. Dep't of Healthcare and Family Servs.*, No. 13-cv-8930, 2014 WL 3704917, at *4 (N.D. Ill. Jul. 25, 2014) (plaintiff's allegations that defendant retaliated against her by denying her requested accommodation were insufficient to serve as an adverse employment action for an ADA retaliation claim because they merely restated plaintiff's failure-to-accommodate claim).

Plaintiff's amended complaint incorporates a hostile work environment claim, as well. The Seventh Circuit has not yet recognized the viability of a hostile work environment cause of action under the ADA. *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009)

11

(citing *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005)). Assuming that such a cause of action exists, the record does not create a genuine dispute as to whether Plaintiff's work environment was "both subjectively and objectively offensive" or that Defendants' conduct was "severe or pervasive," the traditional Title VII requirements for hostile work environment claims. *See Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014) (citing *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 383 (7th Cir. 2012)). Plaintiff alleges that he was subject to "harassment" by Defendants, "making it very difficult to find work" (Am. Compl. ¶ 21), but the record contains no evidence that Defendants harassed him. Plaintiff asserts that he received "threatening letters in the mail from Director Nolan stating that if [Plaintiff] didn't return to work, [he] was going to be terminated." (DSF Ex. 2 at 137–38.) Correspondence notifying him of the consequences for his failure to return to work if he does not follow return-to-work procedures, however, does not amount to threatening or otherwise improper conduct.

Because Defendants are entitled to summary judgment with respect to all of Plaintiff's claims—for discrimination, retaliation, and hostile work environment—there is no need to consider the possible formal shortcomings of Plaintiff's Rule 56.1 statement.

## CONCLUSION

When Defendants directed Plaintiff to return to work after his injury, Plaintiff alleged a failure to accommodate. Defendants did offer him a desk job, but Plaintiff contends it was beyond his driving restrictions. Plaintiff claims Defendants did not otherwise accommodate his disability, but he has not shown that any position was available that did not require inmate conduct. Nor did Defendants retaliate against or harass him by directing him to return to work. Defendants' motion for summary judgment [38] is granted.

ENTER:

Dated: February 26, 2016

REBECCA R. PALLMEYER
United States District Judge